## MITCHELL Co. *v.* UNITED STATES (No. 2020).[1]

SQUARED TIMBERS—RAILROAD TIES.

   Squared timbers imported for the purpose of being cut up into railroad ties, but suitable for other uses also, not known as railroad ties in the form in which imported, are admissible free as "timber * * * unmanufactured, hewn, or sawed, sided. or squared," under paragraph 647, tariff act of 1913, and not dutiable as railroad ties. under paragraph 170.—United States *v.* Baxter (9 Ct. Cust. Appls., 99; T. D. 37975). distinguished and explained.

United States Court of Customs Appeals, April 10, 1920.

APPEAL from Board of United States General Appraisers, G. A. 8297 (T. D. 38175)..
[Reversed.]

   *Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellant.

   *Bert Hanson*, Assistant Attorney General (*Bernard Edelhertz*, special attorney, of counsel), for the United States.

[Oral argument Mar. 26, 1920, by Mr. Tompkins and Mr. Edelhertz.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court: Paragraph 170 of the act of 1913 reads as follows:

170. Paving posts, railroad ties, and telephone, trolley, electric-light, and telegraph poles of cedar or other woods, 10 per centum ad valorem.

In the free list there is a provision, paragraph 647, for "logs, timber, round, unmanufactured, hewn or sawed, sided or squared"; and for "sawed boards, planks, deals, and other lumber, not further manufactured than sawed, planed, and tongued and grooved," not specially provided for.

There were imported at the port of Seattle, and free entry asked, various kinds of lumber and timber. There were many varieties and ranges in size of timber, from 1 by 6 by 10 to 2 by 12 by 16, which were returned as free under this paragraph. There were three other varieties consisting of 6 by 8 by 16, 7 by 8 by 16, and 7 by 9 by 16, which three latter varieties were classified by the collector as railroad ties. The protest claimed that they were entitled to free entry under the free paragraph quoted.

The evidence shows that as to the timbers 6 by 8 by 16 they are general stock sizes stored in the lumber yards, and that a large percentage is sold for building purposes, as for sills or bridge timber. As to the sizes 7 by 8 by 16 and 7 by 9 by 16, these were stock cut into lengths of 8 feet, generally used for ties, possibly when they have reached that stage practically entirely devoted to this use, but when they are in their imported length, 7 by 9 by 16 and 7 by 8 by 16, are adapted to use for bridge timber and other construction, although not usually kept in stock by lumber dealers, but from their very nature are obviously open to use in a practical way upon order or when cut for special delivery.

These timbers of the three last-named dimensions were in fact in the present case imported with the expectation of being manufactured into ties. This is done by cutting two lengths of ties from the long timber with cross-cut saws placed at intervals of 8 feet apart, by one operation trimming the ties at the end and cutting them to length.

The proportion that the expense of cutting these ties from the original timbers imported bears to the cost of production of the original timber is not exactly defined, although it is somewhere in the neighborhood of 10 per cent, probably more. The exact proportion, however, is not important.

The record discloses beyond all sort of question that these timbers, when imported, were not known as railroad ties or as answering to the call of any item appearing in paragraph 170. They do not therefore fall under the dutiable paragraph under which they were assessed,

nor can they be held dutiable, as we see the case, on the ground that they are further advanced than is permissible under the free paragraph quoted. The paragraph contains the provision for free timber, as will be observed, which precisely defines the timber here in question, to wit, "logs, timber, round, unmanufactured, hewn or sawed, sided or squared." There can be no doubt that the timber in this case answers to the requirement of timber "hewn or sawed, sided or squared." It could not be more clearly defined.

Is it unmanufactured, within the meaning of this paragraph? The only provision in the act defining unmanufactured is that for "sawed boards, planks, deals, and other lumber not further manufactured than sawed, planed, and tongued and grooved." It clearly can not be said that these timbers are so advanced or manufactured as to remove them from the benefit of the free provision so long as they are still within the narrow specific provisions of the paragraph itself.

The board in deciding this case appears to have felt bound to hold that United States v. Baxter (9 Ct. Cust. Appls., 99; T. D. 37975) established a rule as to cedar poles mainly used for telephone, trolley, electric-light, and telegraph poles regardless of the fact that they were adaptable to other uses, had been so far advanced as to be devoted to some one of the particular uses mentioned in paragraph 170.

We think, with deference, that the board misapprehended the decision in the Baxter case. In that case, in construing paragraph 170 and applying it to the facts in the case, it was determined that the provision of that paragraph for poles was for a group provision and that poles which answered to the requirements of any one of the group named would be without discrimination held dutiable under that paragraph; that the poles which were there at issue were complete enough so that they were dedicated to this group of uses, and were not dependent for their designation upon their particular use as telegraph poles, as telephone poles, as trolley poles, etc.; that they were all of the same shape and could be used indiscriminately in most cases; that these were poles, even though in installation grooves for side arms were intended to be cut. They had reached the status of poles and were in some instances invoiced as such, and were dealt in as such in the form as imported. It is not necessary to repeat the discussion of the court in the case cited, but the features suggested are fully covered by the decision, and while seeing no reason to depart from the views therein expressed, we can not consider the present case, in which there is nothing to indicate that these importations as made are ever referred to as ties, or that they are advanced beyond the stage of the precise timber mentioned in the paragraph as analogous.

The decision of the board is *reversed.*